Argued May 24, affirmed June 27, petition for rehearing denied
July 26, petition for review denied October 2, 1973

GLEASON ET AL, *Petitioners, v.* LOVE ET AL,
*Respondents.*

511 P2d 435

*Howard Bergman,* Deputy County Counsel, Port-
land, argued the cause for petitioners. With him on
the brief was Charles S. Evans, County Counsel,
Portland.

*Al J. Laue,* Assistant Attorney General, Salem,

argued the cause for respondents. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

*Robert E. Thompson,* Beaverton, filed a brief of amicus curiae for Multnomah Kennel Club, an Oregon corporation. With him on the brief were Thompson, Adams & Lund, Beaverton.

Before SCHWAB, Chief Judge, and FORT and THORNTON, Judges.

FORT, J.

Multnomah County Fair Board, petitioner herein, applied to the Oregon Racing Commission for a license to conduct ten days of dog racing. The Commission granted it a license for five days. The Board appeals, contending that the Racing Commission both as a matter of law and of fact erred in not granting the license for the full ten days applied for.

ORS 462.270, setting forth the duties of the Commission, includes the following:

"* * * * * *

"(2) The commission shall be the sole judge of whether or not a race meet shall be licensed and shall specify the days and dates and number of days the meet shall continue and the number of races per day.

"* * * * * *"

ORS 462.050 provides in part:

"(1) Every person making application for a license to hold a race meet shall file the application with the commission. It shall set forth the time, place and number of days the applicant desires the meet to continue * * *.

"* * * * *

"(3) * * * If the license is granted, *but for fewer days than applied for,* the excess of the deposit shall be returned promptly to the applicant." (Emphasis supplied.)

ORS 462.125 provides in part:

"(1) The commission shall determine the number and classes of race meets to be held in any calendar year.

"(2) Not more than 130 days of racing, exclusive of racing days authorized to designated licensees pursuant to subsection (4) of this section, shall be held in any metropolitan area in any year. Sixty-five of such days shall be allocated to race meets for horses (class A) and 65 days to race meets for animals other than horses (class B). If the commission does not receive and approve license applications for all of the 65 days allocated to either class of racing, the unallocated days may be added to the racing days allocated to and available for the other class of racing.

"(3) As used in subsection (2) of this section, 'metropolitan area' means:

"(a) Multnomah, Clackamas and Washington Counties.

"(b) Marion and Polk Counties.

"(c) Linn and Benton Counties.

"(d) A county other than those designated in paragraphs (a), (b) and (c) of this subsection.

"(4) Each licensee designated in ORS 462.057 *may be granted up to 10 days* of racing to be held within the county in which the licensee holds its fair or show.

"* * * * *." (Emphasis supplied.)

ORS 462.057 (2) describes the licensees referred to in ORS 462.125 (4) as follows:

"(2) Licensees subject to the provisions of this

section are: the Oregon State Fair, the Pendleton Roundup, the Eastern Oregon Livestock Fair, the Pacific International Livestock Exposition, any county fair, and all other nonprofit, fair-type associations conducting a licensed race meet in 1968 and 1969."

It also provides in ORS 462.040:

"(1) Race meet licenses granted by the commission shall be limited to:

"(a) Licenses for horse race meets (class A).

"(b) Licenses for race meets of animals other than horses (class B).

"(2) No licensee shall be granted licenses of both classes nor shall licenses be issued for more than one class of racing on the same race course, track or location. *The limitations of this subsection shall not govern, however, if the commission does not receive and approve applications for race meet licenses from other qualified applicants so as to allow utilization of the maximum number of racing days authorized under ORS 462.125.*

"(3) *The license shall specify the number of days the race meet shall continue* and the number of races per day." (Emphasis supplied.)

Here the respondent Commission in addition to granting five days' greyhound racing to petitioner, offered to grant it an additional five-day license for horse racing.

■ Petitioner contends this was unlawful as in contravention of ORS 462.040 (2), which states: "No licensee shall be granted licenses of both classes * * *." However, following that provision the statute says:

"* * * The limitations of this subsection shall not govern, however, if the commission does not receive and approve applications for race meet

licenses from other qualified applicants so as to allow utilization of the maximum number of racing days authorized under ORS 462.125."

Here the respondent Commission did "not receive *and approve*" (emphasis supplied) a license application from petitioner allowing "utilization of the maximum number of racing days authorized under ORS 462.125."

Under ORS 462.057 (2), only the petitioner, Multnomah County Fair Board, could apply for a license to conduct racing as a "county fair" in Multnomah County. No other applicant could be granted any part of the ten days allowable to a county fair. Indeed it is not contended otherwise. Thus since the respondent Racing Commission did not approve the application of petitioner for the full ten days, it would not have been unlawful under ORS 462.040 (2) for it to have granted to petitioner, had the latter applied for it, a license to conduct an additional five days of horse racing.

■ Next, petitioner contends the respondent acted arbitrarily in not granting the full ten days of greyhound racing it applied for. Petitioner frankly admits in its testimony that its primary, if not its sole, reason for preferring a ten-day license for dog racing rather than the five days of dog racing granted and the five days of horse racing offered to it by the respondent, was because it would receive substantially more money from the ten days of dog racing than from a combination of five days of dog and five days of horse racing. It also contends that respondent cannot lawfully use its belief that the public interest is better served by a policy of balanced racing as the basis for not granting petitioner the full ten days requested.

Petitioner contends it has an absolute right to ten days of racing of its own choosing, and thus that the Oregon Racing Commission cannot withhold a license for the full ten days. The thrust of petitioner's argument on this point is that the word "may" in ORS 462.125 (4) should be read "shall." There are situations in which courts have held that if necessary to carry out the intention of the legislature it is proper to construe "may" as meaning "shall," e.g., *Dilger v. School District 24CJ*, 222 Or 108, 352 P2d 564 (1960). It is also arguable that such a provision would not have been inconsistent with the portion of the Racing Code dealing with private licensees.

Nevertheless, we cannot reach the result which the petitioner seeks, whatever the legislature may possibly have intended, without doing violence to language clearly to the contrary in ORS 462.270 (2) and 462.050 (3), set forth above.

The Racing Commission findings concluded:

"2. This Commission also received applications for licenses to conduct greyhound racing from

"(a) Multnomah Kennel Club—65 days (commercial)

"(b) Pacific International Livestock Exposition—10 days (non-commercial) [①]

"The only application presented to this Com-

---

① We note that concerning this application the Racing Commission also allowed the Pacific International Livestock Exposition only five days for dog racing and extended to it the same offer as the Commission here extended to the Multnomah County Fair Board. Unlike the latter, however, the Pacific International Livestock Exposition accepted the Racing Commission's offer to allow a five-day license for horse racing, and it thus received from the Racing Commission the maximum statutory allowance of ten days' racing, one-half for dog racing and one-half for horse racing.

mission for a horse race meet in the metropolitan area defined by ORS 462.125 (3) (a) was from Portland Meadows for 65 days of racing. Thus, if the Commission was to merely grant the licenses as applied for, there would be 85 days of greyhound racing and only 65 days of horse racing in the foregoing metropolitan area of this state. This would include both commercial and non-commercial race meets.

"3. Twenty days of additional racing granted for greyhound racing would have unfavorable effect upon horse racing in this metropolitan area in that it would tend to promote one class of race meet at the expense of another class of race meet. We find that 20 days of additional greyhound racing would effect [sic] the horse racing industry in this area by substantially increasing income of greyhound operators and management and decreasing income to horse racing management and owners. This would effect [sic] a substantial portion of Oregon's economy. The public would wager more at greyhound meets than horse race meets, simply because there would be less of the latter available to the public in the metropolitan area. The public would then have fewer classes of meets available to it for its entertainment.

"4. It is not in the public interest for this Commission to promote indirectly nor directly one class of racing over another class in any area of the state, nor to substantially decrease the classes of race meets to be made available to the public."

On review of proceedings before a covered administrative agency, ORS 183.480 (7) (d) provides:

"(7) The court may affirm, reverse or remand the order. The court shall reverse or remand the order only if it finds:

"* * * * *

"(d) On review of a contested case, the order

is not supported by reliable, probative and substantial evidence in the whole record * * *."

The record here upon examination reveals sufficient evidence to support the respondent's finding.

The order is affirmed.

THORNTON, J., dissenting.

I am unable to agree with the majority's construction of ORS 462.040 (2), which prohibits the Oregon Racing Commission from issuing, except under certain circumstances, both a horse racing license and a greyhound racing license to the same applicant.

ORS 462.040 (2) reads as follows:

"No licensee shall be granted licenses of both classes nor shall licenses be issued for more than one class of racing on the same race course, track or location. *The limitations of this subsection shall not govern, however, if the commission does not receive and approve applications for race meet licenses from other qualified applicants so as to allow utilization of the maximum number of racing days authorized under ORS 462.125.*" (Emphasis supplied.)

As I read this provision, under the facts of this case the Commission would have no authority to grant petitioners a license to conduct both horse races and greyhound races, even if petitioners had applied for both.

It is apparent from the record, including the letter dated November 16, 1972, from the Commission's chairman to the secretary of the Multnomah County Fair Board, and the Commission's letter of November 24, 1972, that the Commission, at least initially, was operating under the assumption that it had the legal

authority to issue to these petitioners simultaneously two types of licenses—one to conduct horse racing, and one to conduct greyhound racing.

Petitioners argue that this is illegal under ORS 462.040 (2). I agree. For this reason I would reach a different result in this case.

While the exact meaning and application of ORS 462.040 (2), particularly the italicized language, is far from clear, I construe it to mean this: If any applicant fails to apply for and receive the full number of days it is authorized to apply for under ORS 462.125, then any other qualified applicant may apply for the unused portion of that quota. In this event the Commission may grant the applicant a license to conduct two different types or classes of racing, namely, both horse and greyhound racing. However, in the event that all quotas have been applied for and licenses issued by the Commission thereon, no applicant shall be granted a license to conduct two different types or classes of racing.

Therefore the limitation of only one class of license to one licensee does apply if the Commission receives and approves applications so as to allow the maximum number of racing days authorized under ORS 462.125, which in this case was 130 days for commercial applicants and 20 days for noncommercial applicants. While the findings of fact are incomplete on this point, we glean from the table set forth in the amicus brief that the Commission also granted to Pacific International Livestock Exposition a license for five days' greyhound racing and five days' horse racing.

The limitation provision in ORS 462.040 should

be read in pari materia with the similar proviso in ORS 462.125 (2), which reads:

"* * * If the commission does not receive and approve license applications for all of the 65 days allocated to either class of racing, the unallocated days may be added to the racing days allocated to and available for the other class of racing."

The above-quoted subsection by its terms applies only to commercial applicants.

I construe ORS 462.040 (2) as applying only to noncommercial applicants. I can find nothing in the Act or its legislative history to indicate that the legislature ever intended to license commercial horse track operators to also conduct greyhound races, and vice versa.[1]

Therefore, inasmuch as the Commission at its meeting of November 22, 1972, considered and approved applications for all 65 days allowed for each class, and has also granted 10 days—5 of each class—to the Pacific International Livestock Exposition, the Commission would have no authority to grant petitioners a license to conduct both horse races and greyhound races, even if petitioners had applied for both.

I agree with the majority opinion that the word "may" in ORS 462.125 (4) cannot be construed to mean "shall," and that the Commission was not *ipso facto* required to issue petitioners a license for 10 days' greyhound racing. While there are situations wherein the courts have held that if necessary to carry out the

---

[1] It is important to point out that in the comprehensive revision of the racing laws enacted by the 1969 legislature (Oregon Laws 1969, ch 356, p 664), ORS 462.125 was enacted as sec 9 of ch 356, p 666, and ORS 462.040 was enacted as sec 12 of ch 356, p 668.

intention of the legislature it is proper to construe "may" as meaning "shall" (*see,* for example, *Dilger v. School District 24CJ,* 222 Or 108, 352 P2d 564 (1960)), I can find nothing in the entire racing law or in its legislative history to indicate a legislative intent that the Commission is compelled to issue to any class of prospective licensees a license to conduct races for the full number of days authorized by law. All indications are directly to the contrary. ORS 462.050 (3) expressly provides that the Commission may grant licenses for fewer days than applied for. *See also,* ORS 462.270 (2) and (3).

Therefore, while the respondent Commission was not required under ORS 462.125 (4) to grant petitioners the full 10 days' racing it had applied for, it could not grant a license for a lesser number of days if, in fact, the true reason underlying such decision was to coerce petitioners into applying for five days' horse racing also.

Inasmuch as the record does support an inference that the reason the Commission reduced the number of days requested to five was in order to cause petitioners to apply for an equal number of days of horse racing (which ORS 462.040 prohibits), I would reverse and remand these proceedings. Pursuant to the authority vested in this court under ORS 183.480 (7) (a), the Commission should be instructed to reconsider petitioners' application, excluding from such further proceedings and deliberations any considerations based on the erroneous assumption that under the facts of this case the Commission has legal authority to issue to these petitioners licenses to conduct both horse racing and greyhound racing.